UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

CHRISTOPHER KOCHAN,       )
                          )
       Plaintiff,         )
                          )
       v.                 )       Case No. 1:17-cv-00452
                          )
COUNTY OF CATTARAUGUS SHERIFF    )
DEPUTY BRYAN H. SCHAWBENBAUER,   )
TOWN OF ELLICOTTVILLE POLICE     )
OFFICER MATTHEW H. ALBANESE,     )
TOWN OF ELLICOTTVILLE POLICE     )
OFFICER AMBER S. GRAHAM,         )
COUNTY OF CATTARAUGUS            )
ASSISTANT DISTRICT ATTORNEY      )
WILLIAM PRESTON MARSHALL,        )
COUNTY OF CATTARAUGUS            )
SHERIFF TIMOTHY WHITCOMB,        )
DR. SHAHNAWAZ MEER, DR. SYED     )
SHAMSI, and TOWN OF LITTLE VALLEY )
COURT CLERK JILLIAN KOCH,        )
                                 )
       Defendants.               )

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT**
(Docs. 22, 25, 28, 29)

Plaintiff Christopher Kochan brings this action against Defendants County of Cattaraugus Sheriff Deputy Bryan H. Schawbenbauer, Town of Ellicottville Police Officers Matthew H. Albanese and Amber S. Graham, County of Cattaraugus Assistant District Attorney ("ADA") William Preston Marshall, County of Cattaraugus Sheriff Timothy Whitcomb, Dr. Shahnawaz Meer, Dr. Syed Shamsi, and Town of Little Valley Court Clerk Jillian Koch (collectively, "Defendants") pursuant to 42 U.S.C. § 1983 based on alleged incidents arising from his arrest, prosecution, and involuntary confinement.

Pending before the court are Defendants' motions to dismiss for failure to state a claim. (Docs. 22, 25, 28, 29.) Plaintiff opposes the motions. On May 1, 2018, the court heard oral argument and took the pending motions under advisement.

In his Amended Complaint, Plaintiff brings five claims against Defendants pursuant to Section 1983. Count I raises a false imprisonment claim against Officers Albanese and Graham, arising from Plaintiff's initial arrest and detention. Count II alleges that Deputy Schawbenbauer used excessive force in violation of the Fourth Amendment. Count III raises a malicious prosecution claim against Deputy Schawbenbauer, Officers Albanese and Graham, ADA Marshall, and Drs. Meer and Shamsi. Count IV alleges a substantive due process violation against all Defendants. Count V alleges an unlawful imprisonment claim against all Defendants, arising from Plaintiff being declared incapacitated and involuntarily committed.

Although Plaintiff opposes Defendants' motions to dismiss, he agrees that the court should dismiss the following claims: (1) all claims against Sheriff Whitcomb; (2) all claims against Deputy Schawbenbauer, ADA Marshall, and Defendant Koch in their official capacities; (3) the substantive due process claims against Deputy Schawbenbauer and Officers Albanese and Graham in their individual capacities; and (4) Plaintiff's unlawful imprisonment claim against Defendants (Count V). The court therefore DISMISSES these claims.

Plaintiff is represented by Matthew A. Albert, Esq. Deputy Schawbenbauer, ADA Marshall, and Sheriff Whitcomb are represented by Sean William Costello, Esq. Officers Albanese and Graham are represented by James J. Nash, Esq. and Erin Elizabeth Molisani, Esq. Drs. Meer and Shamsi are represented by Amanda Carmella Rossi, Esq. and Sally J. Broad, Esq. Defendant Koch is represented by Paul F. Hammond, Esq.

I.   **The Allegations in Plaintiff's Amended Complaint.**

The following allegations are derived from Plaintiff's Amended Complaint. On May 21, 2014, Town of Ellicottville Police Officers Albanese and Graham stopped Plaintiff's vehicle, despite the fact that Plaintiff "had committed no crime nor even committed a traffic violation." (Doc. 19 at 14, ¶ 64.) The officers arrested and

2

handcuffed Plaintiff, transported him to the Town of Ellicottville Police Headquarters, and handcuffed him to a metal chair. Shortly thereafter, County of Cattaraugus Sheriff Deputy Schawbenbauer and an unidentified deputy arrived. Plaintiff alleges that he attempted to exercise his right to remain silent during questioning by Officer Albanese and Deputy Schawbenbauer and notes he "already had a healthy fear of law enforcement due to a previous beating he had sustained at the hands of" Chautauqua County police officers. *Id.* at 6, ¶ 37.

While Plaintiff remained silent, Deputy Schawbenbauer approached him and yelled "stand up." *Id.* (emphasis and internal quotation marks omitted). Plaintiff attempted to comply, but because his left hand was handcuffed to the chair, he had difficulty standing. Deputy Schawbenbauer shouted "look me in the eye[.]" *Id.* (emphasis and internal quotation marks omitted). With his right hand, he grabbed Plaintiff by the chin and snapped Plaintiff's neck upward before body slamming Plaintiff against the chair and wall, rendering Plaintiff unconscious.

After an unspecified period of time, Plaintiff "awoke from unconsciousness . . . in great fear." *Id.* at 7, ¶ 38. He demanded assault charges be brought against Deputy Schawbenbauer, but the officers "illegally and unlawfully conspire[d] with one another by ignoring Plaintiff's cries for justice[]" and "deprived Plaintiff of medical attention." *Id.* As a result, Plaintiff sustained impaired vision and "routine headaches which he still suffers from to this day." (Doc. 19 at 7, ¶ 38.)[1]

In an alleged cover up of the assault, Deputy Schawbenbauer and Officer Albanese created false accusatory instruments against Plaintiff. Officer Albanese purportedly falsified a "Report of Refusal to Submit to Chemical Test" for a blood alcohol content ("BAC") test to which Plaintiff never submitted and failed to allege that Plaintiff refused to submit to a breathalyzer. *Id.* at 7, ¶ 41 (internal quotation marks

---

[1] Plaintiff further alleges that Deputy Schawbenbauer "had a history of such conduct, including but not limited to being physically aggressive against citizens, and then subsequently perjuring himself." (Doc. 19 at 7, ¶ 39.) Plaintiff erroneously stated that a document demonstrating that Deputy Schawbenbauer had been sued in the Western District of New York was attached to his Amended Complaint.

3

omitted). Deputy Schawbenbauer allegedly falsified a "New York State Data master DMT Operational Checklist" and a "Subject Test" form to make it appear that he appropriately documented Plaintiff's alleged refusal to submit to a BAC test. *Id.* at 8, ¶ 42 (emphasis and internal quotation marks omitted). Additionally, Plaintiff claims that he was never served with several documents related to his arrest, including three unverified or unsigned "traffic information[s,]" a misdemeanor information, a "DWI Bill of Particulars[,]" and a "710.30 statement attributed to Plaintiff." *Id.* at 7, ¶ 41 (internal quotation marks omitted).

At an unidentified date and time, Plaintiff was arraigned on four allegedly falsified accusatory instruments (the "2014 charges") in Ellicottville Village Court. Three of the accusatory instruments alleged that Plaintiff drove while intoxicated, failed to stop at a stop sign, and refused to submit to a BAC test in violation of New York Vehicle and Traffic Law ("VTL"). The fourth accusatory instrument, a misdemeanor information, purportedly alleged that Plaintiff obstructed governmental administration by remaining silent in violation of New York Penal Law § 195.05. With the exception of the misdemeanor information, none of these documents were signed or verified. While the misdemeanor information was verified, Plaintiff contends that it was "facially insufficient" under New York Criminal Procedure Law ("CPL") § 100.40(1)(a)-(b) and § 100.15. *Id.* at 8, ¶ 44. At his arraignment, Plaintiff's driver's license was seized and suspended based on these allegedly false accusatory instruments.

From May 21, 2014 until the proceedings concluded in April 2016, neither the Town of Ellicottville nor County of Cattaraugus courts addressed the issue of the sufficiency of the accusatory instruments. On this basis, Plaintiff claims that there was no jurisdiction to pursue charges against him.

On May 23, 2014, at approximately 2:18 p.m., Plaintiff called the County of Cattaraugus District Attorney's Office and described the alleged assault committed by Deputy Schawbenbauer. ADA Elizabeth Ensell returned Plaintiff's call and stated that because the assault was a civil matter, not a criminal matter, her office would not bring charges.

4

Plaintiff further alleges that soon after he requested that criminal charges be filed against Deputy Schawbenbauer, he "began to notice that he was being followed by members of the Cattaraugus County Sheriff's Department." *Id.* at 10, ¶ 50. On one occasion, Plaintiff described a drive home with his mother in which they were followed by a County of Cattaraugus Sheriff's cruiser. Near the end of their trip, the Sheriff's cruiser ceased its surveillance, but another County of Cattaraugus Sheriff's cruiser approached them in the opposite lane at a high rate of speed. Once it passed Plaintiff and his mother's vehicle, the police cruiser did an immediate U-turn and "appeared to give chase to [Plaintiff's] mother's car." (Doc. 19 at 10, ¶ 50.) As Plaintiff and his mother reached their home, turning into the driveway, the police cruiser "fl[ew] past the driveway at a very high rate of speed without its emergency lights on." *Id.* at 11, ¶ 50. After this incident, Plaintiff decided to "go public concerning the conduct of public employees, including . . . Defendants." *Id.* at 11, ¶ 51. Due to the great stress and fear caused by this law enforcement activity, Plaintiff "purchas[ed] and install[ed] video monitoring equipment in his vehicle to protect himself[.]" *Id.* at 11, ¶ 52.

On June 11, 2014, Plaintiff represented himself at a New York State Department of Motor Vehicles refusal hearing, during which an Administrative Law Judge ("ALJ") found sufficient evidence that Plaintiff refused the BAC test. Plaintiff, however, moved to stay the decision pending his appeal, and a stay was granted.

Despite Plaintiff's repeated assertions that the accusatory instruments were unsigned, ADA Marshall continued prosecuting the 2014 charges. According to Plaintiff, ADA Marshall "concocted a means to confine Plaintiff that would not be subject to the appellate process" by seeking to "confine Plaintiff to a mental institution against his will." *Id.* at 11, ¶ 54. ADA Marshall moved to declare Plaintiff an "incapacitated person[.]" *Id.* at 12, ¶ 55.

Pursuant to CPL § 730.10(1), an "incapacitated person" is "a [d]efendant who, as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense." (Doc. 19 at 12, ¶ 55) (internal quotation marks omitted). Under CPL § 730.30, the court must order a mental examination of a defendant

5

if the defendant may be an incapacitated person. If the court finds the defendant incapacitated, it issues a Final or Temporary Order of Observation, which commits the defendant "to the custody of the [Commissioner of Mental Health] for care and treatment . . . for a period not to exceed ninety days from the date of the order[.]" CPL § 730.40(1). The court must dismiss the accusatory instrument filed against the defendant, and "such dismissal constitutes a bar to any further prosecution of the charge or charges contained in such accusatory instrument." CPL § 730.40(2).[2]

On or about August of 2015, two physicians appointed by the County of Cattaraugus, Shahnawaz Meer and Syed Ali Raza Shamsi, examined Plaintiff to determine whether he was incapacitated. Plaintiff alleges that each doctor "merely spoke with [him] for roughly 20 minutes in their so called examinations, and bypassed vital and necessary testing techniques that speak to whether one is incapacitated per CPL § 730.30." (Doc. 19 at 12, ¶ 57.) Eight months later, during an April 6, 2016 hearing on Plaintiff's mental capacity, both doctors purportedly "admitted to not following proper protocols in a § 730.30 examination[]" and to "not meeting with Plaintiff since their initial consults, despite conceding that capacity is a fluid concept that can change per each individual on a day to day basis." *Id.* at 12, ¶ 58.

According to Plaintiff, Drs. Meer and Shamsi, as well as Town of Little Valley court clerk Jillian Koch, "attempt[ed] and in fact succeed[ed] [in] unlawfully conspiring" to confine Plaintiff to a mental institution in order "to cover up for the initial" actions taken by Deputy Schawbenbauer and Officers Albanese and Graham, who pursued a case against Plaintiff without jurisdiction because they did not sign the accusatory instruments. *Id.* at 12, ¶ 59. Plaintiff claims that ADA Marshall "amplif[ied] the sincere egregiousness of this sham and conspiracy" by pursuing a second prosecution on unidentified charges (the "2016 charges"), in which the accusatory instruments were valid, while

---

[2] Pursuant to Fed. R. Evid. 201, the court takes judicial notice of CPL § 730 and grants the parties ten (10) days after this Order to request an opportunity to be heard on the issue of the propriety of the court doing so.

6

simultaneously moving to declare Plaintiff incapacitated in the 2014 charges. *Id.* at 13, ¶ 60.

On April 6, 2016, a state court judge declared Plaintiff incapacitated. Defendant Koch sent the Final Order of Observation ("Final Order") to Melissa Ball, the Program Director of the County of Cattaraugus Department of Community Services, instead of the Commissioner of Mental Health, as required by CPL § 730.60(1).

From April 6 to April 12, 2016, Plaintiff was "confined [in jail] by [County of Cattaraugus Sheriff Timothy] Whitcomb[.]" *Id.* at 24, ¶ 100. On April 12, 2016, Plaintiff was transferred to the Elmira Psychiatric Center where "the befuddled staff, sensing Plaintiff was more sane than those who had placed him there, turned around and released him the very next day." *Id.*

On July 13, 2016, Plaintiff represented himself at a de novo hearing regarding whether he had refused the BAC test. Officer Albanese appeared at the hearing. This time, the ALJ found in Plaintiff's favor, concluding that Officer Albanese's Report of Refusal "did not state 'reasonable grounds' to arrest, nor any indication of 'conduct by words' indicating a refusal by motorist [Plaintiff][,]" and that the officer's testimony "contained various inconsistencies (including in regard to the critical issue as to who read the DWI warnings and witnessed the refusal)[.]" (Doc. 19 at 9-10, ¶ 48) (emphasis omitted).

## II. Documents Attached to Defendants' Motions.

Plaintiff has not challenged the court's consideration of the documents attached to Defendants' motions in deciding whether to dismiss his claims. Because they are "incorporated in [Plaintiff's Amended Complaint] by reference[,]" or are "integral to" the Amended Complaint, *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotation marks omitted), they are properly before the court and are briefly described herein.[3]

---

[3] While Plaintiff does not challenge the authenticity of the documents described above, he does challenge the authenticity of the "CPL Designation Notification" attached to Defendant Koch's motion to dismiss, which purportedly notifies the Elmira Psychiatric Center that it will receive

7

### A. The Final Order.

Several Defendants attached to their motions a copy of the Final Order which committed Plaintiff to the Cattaraugus County Sheriff's Department until the Commissioner of the Office of Mental Health took custody and further ordered that the Commissioner designate an appropriate facility for Plaintiff for a period not to exceed ninety days from the date of the Order. It issued on April 6, 2016 and is signed by Justice James Halterman for the Town of Little Valley, County of Cattaraugus Justice Court.

### B. Email and Fax Exchange Between Melissa Ball and Defendant Koch.

Defendant Koch attached a copy of an April 7, 2016 email from Melissa Ball, who identifies herself as the "730 Coordinator in Cattaraugus County[,]" which provides a fax number to send the Final Order. (Doc. 28-3 at 2.) She also attached a copy of a fax, dated April 7, 2016, which she transmitted to Ms. Ball. The fax includes a cover letter from Justice Halterman to the New York State Commissioner of Mental Hygiene, stating that the attached Final Order transferred Plaintiff into the Commissioner's custody. *See id.* at 4.

### C. Psychiatric Evaluations of Plaintiff.

Drs. Meer and Shamsi attached their respective psychiatric evaluations of Plaintiff. Dr. Meer reported that Plaintiff was "charged for being disrespectful in the court" and believed "all of [t]his matter [was a] conspiracy against him." (Doc. 29-5 at 1.) She reviewed records provided to her and noted that Plaintiff recounted drinking beer at a bar and that he was subsequently "pulled over [while driving] because he did not stop at the stop sign." *Id.* He was arrested and taken to the police station where he "started [to] exercise" before a "policeman . . . shouted at him." *Id.* In her mental status evaluation, Dr. Meer found that Plaintiff suffered from "Bipolar I Disorder, Most Recent Episode

---

Plaintiff for treatment pursuant to CPL § 730. (Doc. 28-4.) Plaintiff argues that the document was falsified because his Freedom of Information Law ("FOIL") request to the Office of Mental Health and written request to the Cattaraugus County Clerk's office seeking communications between Melissa Ball and Defendant Koch resulted in responses that no such records or communications existed. While it is unclear whether these responses support Plaintiff's claim that the "CPL Designation Notification" was falsified, because their authenticity is challenged, the court does not rely on this document in adjudicating Defendants' motions to dismiss.

Manic, Severe with psychotic features (Principal)[.]" *Id.* at 2. She opined that Plaintiff "is incapacitated as a result of mental illness and lacks capacity to understand the proceedings against him or assist in his own defense." *Id.*

In her psychiatric evaluation, Dr. Shamsi stated that Plaintiff is "noted to be grandiose" and paranoid. (Doc. 29-6 at 1.) She indicated that Plaintiff had severely impaired judgment and found that he had "Bipolar affective disorder, manic, severe, with psychotic features[.]" *Id.* at 3. In Dr. Shamsi's opinion, Plaintiff "has an overestimation of his ability to help himself legally." *Id.* at 2. She concluded that Plaintiff's delusions of grandeur and paranoia "render him unable to participate appropriately in legal matters[]" and that "he is unable to assist in his defense." *Id.*

### III. Conclusions of Law.

#### A. Standard of Review.

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The sufficiency of a plaintiff's complaint under Fed. R. Civ. P. 12(b)(6) is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context specific, requiring the court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" nor "evaluate the likelihood" that a plaintiff's claims will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

After the dismissal of claims with Plaintiff's consent, the following claims remain pending and are subject to Defendants' motion to dismiss: a false imprisonment claim

9

against Officers Albanese and Graham (Count I); a malicious prosecution claim against Deputy Schawbenbauer, Officers Albanese and Graham, ADA Marshall, and Drs. Meer and Shamsi (Count III); and a substantive due process claim against ADA Marshall, Defendant Koch, and Drs. Meer and Shamsi (Count IV). Defendants do not seek the dismissal of a Fourth Amendment excessive force claim against Deputy Schawbenbauer (Count II).

### B. Whether the Substantive Due Process Claim Against Town of Little Valley Court Clerk Jillian Koch (Count IV) Should be Dismissed.

In Count IV, Plaintiff alleges that Defendant Koch violated his right to substantive due process by conspiring with Drs. Meer and Shamsi to confine Plaintiff to a mental institution in order "to cover up for the initial" actions taken by Deputy Schawbenbauer and Officers Albanese and Graham, who pursued a case against Plaintiff without jurisdiction because they did not sign the accusatory instruments. (Doc. 19 at 12, ¶ 59.) In support of this claim, Plaintiff asserts that Defendant Koch sent the Final Order to Melissa Ball, the Program Director of the County of Cattaraugus Department of Community Services, instead of the Commissioner of Mental Health, in contravention of CPL § 730.60(1).

"For a substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005) (internal quotation marks omitted) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). Accepting Plaintiff's allegations as true, he has merely alleged that Defendant Koch committed an administrative error as part of a vague claim of conspiracy. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) ("[A] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.") (internal quotation marks omitted). Plaintiff has thus failed to plausibly allege that Defendant Koch violated his right to substantive due process.

10

Quasi-judicial immunity provides an alternative basis for dismissal of Plaintiff's substantive due process claim. "The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question[]" and "[t]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Gross v. Rell*, 695 F.3d 211, 215 (2d Cir. 2012) (internal quotation marks and alteration omitted) (quoting *Burns v. Reed*, 500 U.S. 478, 486-87 (1991)). "Certain actors associated with the courts enjoy absolute, quasi-judicial immunity from suit because such immunity is 'necessary to protect the judicial process.'" *Id.* Absolute quasi-judicial immunity applies to court clerks who perform "tasks which are judicial in nature and an integral part of the judicial process." *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997); *see also Peker v. Steglich*, 324 F. App'x 38, 39 (2d Cir. 2009) ("New York also provides immunity to judicial clerks in their performance of judicial functions.") (citing *Mosher-Simons v. Cty. of Allegany*, 783 N.E.2d 509 (N.Y. 2002)). "Even when functions that are more administrative in character have been undertaken pursuant to the explicit direction of a judicial officer, that officer's immunity is also available to the subordinate." *Rodriguez*, 116 F.3d at 67 (internal quotation marks and alteration omitted).

Accepting Plaintiff's allegations as true, even if Defendant Koch intentionally sent the Final Order to the wrong individual, absolute quasi-judicial immunity prevents Plaintiff from bringing a substantive due process claim against her. Transmitting an order signed by a judge to a state agency is a judicial act performed by the state criminal court. CPL § 730.60(1) provides that the court "must forward such order" to the Commissioner of Mental Health. Defendant Koch was thus acting on behalf of the Town of Little Valley court in transmitting the Final Order. While Plaintiff argues that Defendant Koch's actions were ministerial, not judicial in nature, the mere fact that a task is "more administrative in character" does not remove the shield of absolute quasi-judicial immunity when such task was performed "pursuant to the explicit direction of a judicial officer[.]" *Rodriguez*, 116 F.3d at 67 (holding that "court clerks are entitled to immunity for harms allegedly related to the delay in scheduling appellant's appeal.").

11

The court therefore DISMISSES Plaintiff's substantive due process claim (Count IV) against Defendant Koch.

### C. Whether the Claims Against Dr. Shahnawaz Meer and Dr. Syed Shamsi Should be Dismissed.

Plaintiff raises substantive due process and malicious prosecution claims against Drs. Meer and Shamsi, alleging that they participated in the conspiracy to "cover up" the actions taken by the officers by performing twenty-minute examinations of Plaintiff's mental capacity that did not follow "proper protocols [for] a [CPL] § 730.30 examination[.]" (Doc. 19 at 12, ¶ 58.) Similar to the allegations against Defendant Koch, however, Plaintiff has not asserted facts beyond a "naked assertion[]" of a conspiracy involving these defendants. *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). In particular, Plaintiff has not plausibly alleged that they played any role in "commenc[ing] or continu[ing]" a criminal prosecution against him, the first element of a malicious prosecution claim. *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016).

With regard to substantive due process, Plaintiff does not allege facts demonstrating that the doctors' purported failure to follow proper protocols in examining him amounts to actions that "shock the contemporary conscience." *Velez*, 401 F.3d at 93 (internal quotation marks omitted). As a result, Plaintiff has failed to plausibly allege a malicious prosecution or a substantive due process violation against Drs. Meer and Shamsi.

Drs. Meer and Shamsi further contend that they are entitled to absolute quasi-judicial immunity because they conducted court-ordered psychiatric examinations pursuant to CPL § 730. The Second Circuit has extended absolute quasi-judicial immunity to state probation officers in suits for damages "in connection with their preparation and submission of [pre-sentence] reports to the courts." *Hili v. Sciarrotta*, 140 F.3d 210, 213 (2d Cir. 1998). Because court-appointed physicians also prepare reports as "arms of the court," other circuits have held that medical evaluators, "including

psychiatrists, are absolutely immune from liability for damages when they act at the court's direction." *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009).[4]

In this case, Plaintiff concedes that Dr. Meer and Dr. Shamsi provided court-ordered psychiatric examinations. In such circumstances, their alleged failure to follow proper protocols is immaterial to the immunity analysis because "even allegations of bad faith or malice cannot overcome judicial immunity." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009); *see also Henderson v. Heffler*, 2010 WL 2854456, at *3 n.2 (W.D.N.Y. July 19, 2010) (accepting as true the plaintiff's allegation that the court-appointed medical evaluators agreed "to dispense with standard evaluation[]" procedures in order to "depriv[e] Plaintiff of liberty and property[,]" but concluding that "such allegations of malice or bad faith do not overcome absolute quasi-judicial immunity."). Because they performed court-ordered examinations, Drs. Meer and Shamsi are protected by absolute quasi-judicial immunity. The court therefore DISMISSES Counts III and IV against them.

### D.  Whether the Claims Against ADA Marshall Should be Dismissed.

ADA Marshall argues that the court should dismiss the malicious prosecution and substantive due process claims against him because he is entitled to absolute prosecutorial immunity. He asserts that, at all times relevant to the Amended Complaint,

---

[4] *See also McArdle v. Tronetti*, 961 F.2d 1083, 1085 (3d Cir. 1992) (finding that a court-appointed psychiatrist's examination "was an integral part of the judicial process and is protected by the same absolute judicial immunity that protects [the judge]."); *Moses v. Parwatikar*, 813 F.2d 891, 892 (8th Cir. 1987) ("As a psychiatrist appointed by the court to conduct a competency examination, Dr. Parwatikar performed functions essential to the judicial process."); *Burkes v. Callion*, 433 F.2d 318, 319 (9th Cir. 1970) ("The function of the examining psychiatrists . . . falls within the scope of 'quasi-judicial immunity,' . . . to extend to acts committed 'in the performance of an integral part of the judicial process.'"). District courts in the Second Circuit have reached the same conclusion. *See, e.g., Henderson v. Heffler*, 2010 WL 2854456, at *3 (W.D.N.Y. July 19, 2010) (holding that a court-appointed medical evaluator was absolutely immune from suit); *Faraldo v. Kessler*, 2008 WL 216608, at *5 (E.D.N.Y. Jan. 23, 2008) (concluding that the defendant "is entitled to absolute immunity because, as [a] court evaluator appointed pursuant to N.Y. Mental Hygiene Law § 81.09, she acted as an arm of the court[.]") (alterations and internal quotation marks omitted); *Hunter v. Clark*, 2005 WL 1130488, at *2 (W.D.N.Y. May 5, 2005) (holding that claims against court-appointed psychiatrists should be dismissed because the psychiatrists were shielded by quasi-judicial immunity).

he acted as the prosecutor in the judicial phase of a criminal proceeding which resulted in a judicial finding that Plaintiff lacked the capacity to stand trial for the 2014 charges. Plaintiff responds that neither absolute nor qualified immunity apply because ADA Marshall acted outside of the scope of his authority as a prosecutor when he brought the 2014 and 2016 charges against Plaintiff simultaneously, yet only moved for a finding of lack of capacity with regard to the 2014 charges.

Prosecutors are entitled to absolute immunity from an action for damages under Section 1983 when they engage in activities "intimately associated with the judicial phase of the criminal process[.]" *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *see also Ying Jing Gan v. City of New York*, 996 F.2d 522, 530 (2d Cir. 1993) ("It is well-settled that prosecutors performing prosecutorial activities that are 'intimately associated with the judicial phase of the criminal process' are entitled to absolute immunity from an action for damages under § 1983."). Although absolute immunity "does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty[,]" the Supreme Court in *Imbler* reasoned that "the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." *Imbler*, 424 U.S. at 427-28.

"In determining whether a prosecutor enjoys absolute immunity against any particular claim for damages, the courts are to apply a 'functional approach,' examining 'the nature of the function performed, not the identity of the actor who performed it.'" *Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). Prosecutors are "absolutely immune from suit only when acting as advocates and when their conduct involves the exercise of discretion." *Flagler v. Trainor*, 663 F.3d 543, 547 (2d Cir. 2011); *see also Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (stating that the functional approach to "absolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate."). Absolute immunity, however, does not shield a prosecutor

14

acting in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357 (1978) (internal quotation marks omitted); *see also Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) ("When a district attorney functions outside of his or her role as an advocate for the People, the shield of immunity is absent.").

> [T]he Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case. On the other hand, the Court has withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness.

*Flagler*, 663 F.3d at 547 (footnotes omitted).

"An official who asserts absolute immunity from § 1983 liability shoulders the burden of establishing the existence of immunity for the function in question." *Hill*, 45 F.3d at 660. Although absolute immunity "is an affirmative defense whose availability depends on the nature of the function being performed by the defendant[,]" when the nature of that function is "clear from the face of the complaint[,] . . . the absolute immunity defense may be resolved as a matter of law on a motion to dismiss the complaint pursuant to Rule 12(b)(6)." *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005).

Under New York law, a district attorney is permitted to move for a hearing to evaluate a defendant's capacity pursuant to CPL § 730. ADA Marshall therefore acted within the scope of his authority as a prosecutor by moving to declare Plaintiff incapacitated. His motivation for moving to declare Plaintiff incapacitated is irrelevant "because the immunity attaches to his function, not to the manner in which he performed it." *Dory*, 25 F.3d at 83 (alteration and internal quotation marks omitted); *see also Shmueli*, 424 F.3d at 237 ("Once the court determines that the challenged prosecution was not clearly beyond the prosecutor's jurisdiction, the prosecutor is shielded from liability for damages for commencing and pursuing the prosecution, regardless of any allegations that his actions were undertaken with an improper state of mind or improper motive.").

15

Plaintiff's further contention that absolute immunity does not apply because, when ADA Marshall prosecuted Plaintiff, he had not filed an oath of office within the statutorily required period, cannot be considered because this claim is not set forth in his Amended Complaint.[5] Even if properly before the court, this alleged fact would not render ADA Marshall's actions unprotected under New York law which provides:

> If a public officer[] . . . shall hereafter enter on the performance of the duties of his or her office, without taking or filing an official oath, or executing or filing an official undertaking, . . . his or her acts as such officer, so performed, shall be as valid and of as full force and effect as if such oath had been duly taken and filed[.]

N.Y. Pub. Off. Law § 15.

Relying on this provision, the Second Circuit has held that the failure of a New York Family Court referee to file an oath of office did "not deprive her of [judicial] immunity or jurisdiction." *Wilson v. Wilson-Polson*, 446 F. App'x 330, 331 (2d Cir. 2011); *see also Gilmartin v. Tax Appeals Tribunal*, 818 N.Y.S.2d 682, 684 (N.Y. App. Div. 2006) (holding that "acts performed by a public officer who has not taken and filed an official oath are as valid and effective as if the oath had been taken and filed"). Consequently, ADA Marshall's purported failure to file an oath of office within the statutorily required period does not deprive him of absolute immunity.

Because absolute immunity shields ADA Marshall from liability, Counts III and IV against ADA Marshall are DISMISSED.

### E. Whether Plaintiff's False Imprisonment Claim Against Officers Albanese and Graham (Count I) Should be Dismissed.

In Count I of his Amended Complaint, Plaintiff alleges that Officers Albanese and Graham falsely imprisoned him by arresting him, transporting him to the Town of Ellicottville Police Headquarters, and handcuffing him to a chair upon arrival. Plaintiff

---

[5] *See Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) ("Factual allegations contained in legal briefs or memoranda are . . . treated as matters outside the pleadings for purposes of Rule 12(b)."); *see also Peacock v. Suffolk Bus Corp.*, 100 F. Supp. 3d 225, 231 (E.D.N.Y. 2015) ("It is well-settled that a plaintiff cannot amend [a] complaint by asserting new facts . . . for the first time in opposition to a motion to dismiss.") (internal quotation marks and alteration omitted).

claims that the officers arrested him even though he had not committed a crime or traffic violation, was unarmed, and "posed no threat or danger to the police." (Doc. 19 at 14, ¶ 65.) Officers Albanese and Graham move to dismiss this claim because Plaintiff failed to allege that the confinement was not privileged.

The elements of a false imprisonment claim under New York law "are substantially the same" as the elements of such a claim under Section 1983. *Torres v. Jones*, 47 N.E.3d 747, 762 (N.Y. 2016). "To prevail on such a cause of action, the plaintiff must demonstrate that the defendant intended to confine the plaintiff, that the plaintiff was conscious of the confinement, that the plaintiff did not consent to the confinement and that the confinement was not privileged[.]" *Id.* at 760.

An act of confinement "is privileged if it stems from a lawful arrest supported by probable cause[.]" *Id.* "The existence of probable cause serves as a legal justification for the arrest and an affirmative defense to the claim[.]" *Martinez v. City of Schenectady*, 761 N.E.2d 560, 564 (N.Y. 2001). "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (internal quotation marks and emphasis omitted).

Accepting Plaintiff's allegations as true, Plaintiff asserts that the officers arrested him even though he had not committed a crime or traffic violation and posed no threat or danger to the police. In the absence of probable cause to arrest, Officers Albanese and Graham cannot establish as a matter of law that the arrest and detention of Plaintiff was privileged. The court therefore DENIES their motion to dismiss Plaintiff's false imprisonment claim (Count I) without prejudice.[6]

---

[6] In their reply brief, Officers Albanese and Graham note that Plaintiff conceded that the unlawful imprisonment claim (Count V) should be dismissed. Count V, however, arises from Plaintiff being declared incapacitated and involuntarily confined, whereas Count I is based on his initial arrest and detention. Because the two claims are distinct, Plaintiff's concession as to

17

### F. Whether Plaintiff's Malicious Prosecution Claim Should be Dismissed (Count III).

In Count III, Plaintiff alleges that Defendants conspired to maliciously prosecute the 2014 charges against him "over a two-year period based on faulty and unsigned accusatory instruments[.]" (Doc. 19 at 18, ¶ 77.) In light of the rulings set forth herein, only Defendants Officers Albanese and Graham and Deputy Schawbenbauer remain subject to this claim.

The officers move to dismiss the malicious prosecution claim because the 2014 charges were dismissed pursuant to CPL § 730 and therefore Plaintiff cannot demonstrate that the criminal proceedings terminated in his favor. Plaintiff counters that the prosecution terminated in his favor because the CPL § 730 proceedings arose in the context of the 2014 charges, but not the 2016 charges, due to the fact that the evidence supporting the 2014 charges was weak. According to Plaintiff, "[i]f the prosecution truly felt that Plaintiff lacked capacity, then they would have moved to have all charges dismissed against him pursuant to CPL § 730. However, the prosecution only opted to move for dismissal pursuant to CPL § 730 [for the 2014 charges.]" (Doc. 26 at 10.)

"[T]he merits of a claim for malicious prosecution under § 1983 are governed by state law." *Dufort v. City of New York*, 874 F.3d 338, 350 (2d Cir. 2017). To state a malicious prosecution claim under New York law, a plaintiff must allege "the commencement or continuation of a criminal proceeding against [him]; the termination of the proceeding in [his] favor; that there was no probable cause for the proceeding; and that the proceeding was instituted with malice." *Mitchell*, 841 F.3d at 79 (internal quotation marks omitted). "When raising a malicious prosecution claim under Section 1983, a plaintiff must also show a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." *Id.* (internal quotation marks omitted).

---

Count V does not require dismissal of Count I in the absence of a further concession that the traffic stop was lawful and there was probable cause for his arrest.

18

"[A]ny final termination of a criminal proceeding in favor of the accused, such that the proceeding cannot be brought again, qualifies as a favorable termination[.]" *Smith-Hunter v. Harvey*, 734 N.E.2d 750, 753 (N.Y. 2000). An exception to this rule, however, applies when "termination of the criminal prosecution is inconsistent with the innocence of the accused." *Id.* Examples of this exception include dismissal of a criminal proceeding "because of the 'impossibility or impracticality of bringing the accused to trial[,]'" *id.* (quoting RESTATEMENT (SECOND) OF TORTS § 661), and when "the charge is withdrawn or dismissed out of mercy requested or accepted by the accused[.]" *Id.* at 754.

In *Lewis v. Brown*, 2017 WL 1091986 (S.D.N.Y. Mar. 15, 2017), the court dismissed the plaintiff's malicious prosecution claim, holding that charges dismissed pursuant to CPL § 730 do not constitute a termination of the proceedings in the plaintiff's favor. Interpreting the New York Court of Appeals's decision in *Smith-Hunter*, the district court applied the exception that "there is no favorable termination where the criminal proceeding is dismissed because of the impossibility or impracticality of bringing the accused to trial." *Id.* at *6 (alterations and internal quotation marks omitted). This remains true when the plaintiff "wrongfully makes himself unavailable, but also in the neutral circumstance when [the plaintiff's] absence from the jurisdiction has no such purpose and when the impossibility of bringing him back is due to causes for which he is not responsible." *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 661) (internal quotation marks omitted).

The purpose of the favorable termination requirement is to "weed out malicious prosecution claims unlikely to be meritorious[,]" but "a dismissal based on incapacity does not suggest that the case against the accused was weak." *Id. Lewis* thus held that dismissal pursuant to CPL § 730 did not constitute a termination of proceedings in the plaintiff's favor. The same result is warranted here. Because the 2014 charges concluded with a finding that Plaintiff was incapacitated pursuant to CPL § 730, there was no termination of the prosecution in Plaintiff's favor. The court therefore DISMISSES Count III against Officers Albanese and Graham and Deputy Schawbenbauer.

## CONCLUSION

For the foregoing reasons, the court GRANTS IN PART AND DENIES IN PART Defendants' motions to dismiss. (Docs. 22, 25, 28, 29.) Plaintiff's malicious prosecution claim (Count III), his substantive due process claim (Count IV), and his unlawful imprisonment claim (Count V) are DISMISSED. The court DENIES Officers Albanese and Graham's motion to dismiss Plaintiff's false imprisonment claim (Count I).
SO ORDERED.

Dated at Burlington, Vermont, this 13th day of August, 2018.

Christina Reiss, District Judge
United States District Court